UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**UNITED STATES OF AMERICA**

**v.**

**JOSE ALEX LOPEZ, a/k/a "Lito,"**
**Defendant.**

**CRIMINAL NO. 4:24-cr-448**

## PLEA AGREEMENT

The United States of America, by and through Nicholas J. Ganjei, United States Attorney
for the Southern District of Texas, and Anh-Khoa Tran, Assistant United States Attorney, and
Department of Justice Trial Attorney, Amy L. Schwartz, the Defendant, **JOSE ALEX LOPEZ,**
**a/k/a "Lito"** ("Defendant"), and Defendant's counsel, Guy L. Womack, Esq., pursuant to
**11(c)(1)(A)** and **11(c)(1)(B)** of the Federal Rules of Criminal Procedure, state that they have
entered into a plea agreement (the "Plea Agreement,") the terms and conditions of which are as
follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count One of the Indictment. Count One charges
Defendant with Conspiracy to Possess with Intent to Distribute and Distribute a Controlled
Substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A).

2. Defendant also agrees to admit that he was convicted of a serious drug felony on
August 21, 2014, ~~2024~~, in Harris County, Texas, as alleged in the Government's Information Alleging
Prior Serious Drug Felony Conviction (21 U.S.C. § 851), filed on November 17, 2025 ("the 851
Information").

3. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Indictment, or proved to a jury or proven beyond a reasonable doubt. Defendant further agrees to waive any notice or pleading requirements in the Indictment with regards to a recidivist enhancement under Sections 841(b)(1)(A) & (B).

### Punishment Range

a.    Given Defendant's prior conviction for a serious drug felony, for Count One, for the violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A), the statutory minimum penalty is not less than 15 years imprisonment, the statutory maximum penalty is not more than life imprisonment, and a fine of not more than $20,000,000. Additionally, Defendant may receive a term of supervised release after imprisonment of at least ten years. *See* Title 18, United States Code, Sections 3559(a)(1), 3583(b), and Title 21 United States Code Section 841(b)(1)(A).

b.    Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release that may be imposed as part of his sentence, then Defendant may be imprisoned for up to five years (for Count One), without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, Sections 3559(a)(1) and 3583(e)(3).

c.    Defendant understands that sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

4. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment

2

in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

5. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

## Waiver of Appeal, Collateral Review, and Statute of Limitations

6. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally

attacks his conviction or sentence, the United States will assert its rights under this Plea Agreement and seek specific performance of these waivers.

7. Defendant also agrees that should the conviction following Defendant's plea of guilty pursuant to this Plea Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Plea Agreement (including any counts that the United States has agreed to dismiss at sentencing pursuant to this Plea Agreement) may be commenced or reinstated against Defendant, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Plea Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Plea Agreement is signed.

8. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence Defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9. Defendant understands and agrees that each and all waivers contained in the Plea Agreement are made in exchange for the concessions made by the United States in this Plea Agreement.

### The United States' Agreements

10. The United States agrees to the following:

a) If Defendant pleads guilty to Count 1 of the Indictment and admits the allegations in the 851 Information, and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the Indictment at the time of sentencing.

b) If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

### Plea Agreement Binding - Southern District of Texas and VCRS Only

11. The United States Attorney's Office for the Southern District of Texas and the United States Department of Justice Violent Crime and Racketeering Section ("VCRS") agree that they will not further criminally prosecute Defendant in the Southern District of Texas for the specific conduct described in the Indictment. This Plea Agreement binds only the United States Attorney's Office for the Southern District of Texas, VCRS, and Defendant. It does not bind any other United States Attorney's Office or section of the Department of Justice. The United States Attorney's Office for the Southern District of Texas and VCRS will bring this plea agreement and any addendum or supplemental agreement to the attention of other prosecuting offices, if requested.

5

### United States' Non-Waiver of Appeal

12. The United States reserves the right to carry out its responsibilities under guidelines

sentencing. Specifically, the United States reserves the right:

(a) to bring the facts of this case, including evidence in the files of the United States Attorney's Office for the Southern District of Texas or the files of any investigative agency, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

13. Defendant is aware that the sentence will be imposed after consideration of the United

States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the

provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges

and agrees that the Court has authority to impose any sentence up to and including the statutory

maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be

imposed is within the sole discretion of the sentencing judge after the Court has consulted the

applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions

regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence

imposed is within the discretion of the sentencing judge. If the Court should impose any sentence

up to the maximum established by statute or should the Court order any or all of the sentences

imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and

will remain bound to fulfill all of the obligations under this Plea Agreement.

## Rights at Trial

14. Defendant understands that by entering into this Plea Agreement, he surrenders certain rights as provided in this Plea Agreement. Defendant understands that the rights of a Defendant include the following:

(a) If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the Court all agree;

(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses, and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court; and

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

15. Defendant is pleading guilty because he is in fact guilty of the charges contained in Count One of the Indictment. If this case were to proceed to trial, the United States could prove each element of the offenses beyond a reasonable doubt. The following facts, among others, would be offered to establish Defendant's guilt:

a)    During October 2022, Defendant was at a residential drug treatment program. During that time, he arranged for codefendant Kelsey Quinn Rigby ("RIGBY"), to manage his drug-trafficking operation by receiving cocaine from his sources of supply and passing that cocaine on to codefendant A'lan TINGLE ("TINGLE").

b)    Defendant and RIGBY were in direct contact with a cocaine supplier while he was at the rehabilitation facility.

7

c)    During October 2022, RIGBY received cocaine from Defendant's source of supply on behalf of Defendant on at least one occasion.

d)    Moreover, during October 2022, RIGBY provided TINGLE with cocaine on behalf of Defendant on more than one occasion and attempted to acquire additional cocaine for further deliveries.

e)    Text messages recovered from TINGLE's phone reveal the following messages:

    i.    On Sunday, October 2, 2022, RIGBY messaged TINGLE indicating that she only had two kilograms of cocaine but would have more later that evening.

    ii.    On October 4, 2022, TINGLE messaged RIGBY indicating that he had money for three kilograms of cocaine and would come by to pick up the cocaine after work. RIBGY replied, "I'll come after work." Later that day, RIBGY messaged TINGLE, "Here."

    iii.    On October 13, 2022, RIGBY messaged TINGLE indicating that she could bring him four kilograms of cocaine and followed up, "Is that enough until Saturday?" TINGLE agreed. Later that night, RIGBY texted TINGLE "OMW," which stands for "On my way."

    iv.    RIGBY discussed with TINGLE the prospect of acquiring additional cocaine, but relayed on Friday, October 14, 2022, that "He just said they're out until Sunday."

    v.    On October 18, 2022, RIGBY shared with TINGLE a screenshot of an exchange between herself and someone identified by the screen name "Mex" in which RIGBY asked Mex "am I able to come grab 7." Based on the investigation, law enforcement believes this was a conversation with one of

8

Defendant's suppliers, and that RIGBY was referring to 7 kilograms of cocaine. The next day, RIGBY messaged TINGLE, "He's gonna drop 10 tho," which law enforcement understood to mean that the supplier was going to provide 10 kilogram of cocaine. RIBGY also told TINGLE that "he told Lito Saturday," indicating that Defendant, who goes by the nickname "Lito," had coordinated with his supplier to conduct the drug transaction on Saturday.

vi.    On October 23, 2022, RIGBY relayed to TINGLE, "Lito, said we good for 16.5," and "So next ones, I got you."

f)    Based upon the above evidence, RIGBY delivered at least six kilograms of cocaine to TINGLE on Defendant's behalf in October 2022 and conspired to deliver more..

g)    Furthermore, from August 2023 through August 2024, Defendant regularly sold multi-kilogram quantities of cocaine to unindicted co-conspirator 1 (UC-1). A typical transaction involved Defendant meeting with UC-1, providing the cocaine in a duffel-type bag or box, and receiving cash in return.

h)    Meetings occurred in at least August 2023, February 2024 (at least twice), March 2024, and April 2024. In particular, in March 2024 and April 2024, Defendant sold UC-1 at least 22 kilos of cocaine over approximately nine transactions.

i)    In addition, in April 2024 and May 2024, Defendant provided a total of at least half a kilo of cocaine to codefendant Tanausu MADRIGAL ("MADRIGAL"). On or about that time, Defendant also agreed to let MADRIGAL sell cocaine to Defendant's usual customers.

j)    In May 2024, Defendant went to the house that MADRIGAL shared with Defendant's son, codefendant Jordan LOPEZ. Because Defendant's son Jordan LOPEZ had been arrested, Defendant wanted to pick up cocaine that Defendant had provided to Jordan

9

LOPEZ for resale. During the encounter with MADRIGAL, Defendant and MADRIGAL argued about money that MADRIGAL claimed Jordan LOPEZ owed MADRIGAL, and both MADRIGAL and Defendant brandished firearms. Ultimately, Defendant retrieved the cocaine belonging to his son and departed.

k)     Defendant also supplied cocaine to MADRIGAL's uncle, JOE MADRIGAL. This included two occasions when JOE MADRIGAL was incarcerated in the fall of 2023 and called Defendant from jail to request that Defendant arrange for half kilo deliveries of cocaine to JOE MADRIGAL's home.

l)     In April 2024 and May 2024, Defendant provided codefendant Jared ROBLEDO a kilo of cocaine on at least one occasion and agreed to provide ROBLEDO with an additional 9 ounces of cocaine on a second occasion.

m)     Moreover, from 2023 through May 2024, Defendant provided TINGLE with at least 20 kilos of cocaine for resale in the course of multiple transactions.

n)     Defendant acquired the cocaine he sold from multiple sources, one of which was a high-volume distributor of cocaine imported from Mexico. In March 2024, Defendant acquired at least 33 kilograms from this source. This was the same supplier from whom Defendant had arranged for RIGBY to obtain cocaine in October 2022.

o)     In late March 2024, law enforcement raided a stash house for this supplier and seized approximately 41 kilograms of cocaine. After the stash house was raided by law enforcement and that source of supply was interrupted, Defendant continued to obtain cocaine from elsewhere so that he could continue trafficking in it. Defendant acquired more than eight kilograms of cocaine from another source within two months of the raid on the stash house.

p)    Separately, on May 16, 2024, agents lawfully intercepted a call around 12:10 p.m. in which Defendant instructed RIGBY to take all the illegal narcotics out of their shared house and bring it to TINGLE's home because Defendant believed he was being followed by law enforcement. Although RIGBY initially protested, she ultimately agreed to relocate the drugs. Physical surveillance and pole camera footage outside TINGLE's residence confirmed that about 30 minutes later, RIGBY approached TINGLE's residence, retrieved a plastic bag containing at least 500 grams of cocaine from her trunk, and walked inside TINGLE's residence.

q)    On May 22, 2024, agents executed a search warrant on TINGLE's residence and among other things, recovered more than half a kilo of a white powdery substance that was confirmed by the DEA South Central Laboratory to be approximately 573.8 grams of cocaine. That included the cocaine that RIGBY had transported to TINGLE's home at Defendant's request.

r)    Law enforcement executed arrest warrants for Defendant and RIGBY on August 28, 2024, and executed a search warrant at their shared residence at 5635 Heather Run Drive, Houston, Texas 77041. The search recovered:

1.  $13,844 in U.S. currency
2.  An FN 503 pistol serial number CV016847
3.  A SCCY CPX-2 handgun, serial number 429654
4.  An FN 9mm 509 handgun, serial number GKS0153721

s)    At the time, law enforcement failed to locate an additional cache of at least $40,000 of U.S. currency that had been hidden in the insulation of the attic of the house.

t)    Based on the above facts, Defendant trafficked at least 50 kilograms of cocaine between October 2022 and the time of his arrest on August 28, 2024.

u)    All of the above facts occurred within the Southern District of Texas.

16. In light of the foregoing, Defendant admits that, beginning in or about August 2023, the exact date being unknown, and continuing up to and including the date of the Indictment, in the Southern District of Texas, Defendant did knowingly and intentionally conspire and agree with TINGLE, ROBLEDO, RIGBY, Jordan LOPEZ, and MADRIGAL, and others known and unknown, including UC-1, to possess with intent to distribute and distribute at least 5 kilograms of a mixture and substance containing a detectable amount of cocaine its salts, isomers, and salts of isomers, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii), and 846.

**Breach of Plea Agreement**

17. If Defendant should fail in any way to fulfill completely all of the obligations under this Plea Agreement, the United States will be released from its obligations under the Plea Agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this Plea Agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this Plea Agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

**Monetary Penalties, Assets and Financial Disclosures**

18.    Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to Defendant may be applied to federal debts.

19.    Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

20. Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Defendant agrees to pay full restitution as determined by the Court, regardless of the resulting loss amount, to all victims harmed by Defendant's "relevant conduct," as defined by U.S.S.G. § 1B1.3, including conduct pertaining to any dismissed counts or uncharged conduct, and regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that should the Court impose a payment schedule, the payment schedule sets forth minimum payments and does not foreclose additional collection of restitution.

### Forfeiture

21. As part of this Plea Agreement, Defendant agrees to the following:

(a) to forfeit, via either an administrative or judicial proceeding, all assets listed in the charging document (including any Supplemental Notice of Forfeiture), and to forfeit or abandon any assets seized during this investigation including, but not limited to, the following specific assets which Defendant acknowledges are connected with the offense:

1. $13,844 in U.S. currency,
2. An FN 503 pistol serial number CV016847,
3. A SCCY CPX-2 handgun, serial number 429654,
4. An FN 9 mm 509 handgun, serial number GKS0153721,
5. $40,000 in U.S. currency,
6. $39,409.13 in U.S. currency seized on or about October 1, 2024, from Capital One Account ending in 1605, and
7. Any and all interest or claim Defendant may have in the assets of the J&H Construction Company personally, or any interest or claim Defendant may be able

13

to assert on behalf of J&H Construction Company to assets owned by J&H Construction Company, which includes but is not limited to a lot located at 3612 Truxton Drive, Pasadena, Texas 77503.

(b) to withdraw any claims and petitions for such listed or seized assets, whether in this proceeding or another proceeding, and to waive notice of administrative proceedings (including forfeiture, destruction, and abandonment for seized property);

(c) that the Court will determine the proper amount of a money judgment;

(d) that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists, so that the forfeiture money judgment may be immediately satisfied via forfeiture of substitute property; and

(e) to the order of forfeiture becoming final as to Defendant immediately following this guilty plea or immediately following entry of the forfeiture order, whichever applies.

## Financial Statement

22.    Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this Plea Agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

23.    Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

14

**Complete Agreement**

24. This written Plea Agreement, consisting of 17 pages, including the attached addendum of Defendant and his attorney, constitutes the complete Plea Agreement between the United States, Defendant, and Defendant's counsel. Other than any written proffer agreement(s) that may have been entered into between the United States and Defendant and/or any separate signed supplemental agreement, this Plea Agreement supersedes any prior understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless in writing and signed by all parties. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

25. Any modification of this Plea Agreement must be in writing and signed by all parties.

Filed at ___Houston___, Texas, on ___November 19___, 2025.

_____
JOSE ALEX LOPEZ,
Defendant

Subscribed and sworn to before me on ___November 19___, 2025.

NATHAN KYLE OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

NICHOLAS J. GANJEI
*United States Attorney*

By: _____
ANH-KHOA TRAN
Assistant United States Attorney
Southern District of Texas

_____
AMY L. SCHWARTZ
Trial Attorney
Criminal Division
Violent Crime and Racketeering Section

_____
GUY L. WOMACK
Attorney for Defendant

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**UNITED STATES OF AMERICA**

**v.**                                               **CRIMINAL NO. 4:24-cr-448**

**JOSE ALEX LOPEZ, a/k/a "Lito,"**
**Defendant.**

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements, and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory, and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this Plea Agreement with Defendant. To my knowledge, Defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

_____                    11/19/25
GUY L. WOMACK                                              Date
Attorney for Defendant

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand this Plea Agreement and I voluntarily agree to its terms.

_____                    11/19/25
JOSE ALEX LOPEZ                                          Date
Defendant

17